# District of Columbia
# Court of Appeals

**No. 14-CO-1393**

RALPH L. CLARK, JR.,

Appellant,



FILED

APR **21** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

**CF3-7495-10**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: WASHINGTON, *Chief Judge*; THOMPSON, *Associate Judge*, and
FERREN, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of the trial court is affirmed.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: April 21, 2016.

Opinion by Senior Judge John M. Ferren.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CO-1393

RALPH L. CLARK, JR., APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 4/21/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior
Court of the District of Columbia
(CF3-7495-10)

(Hon. Ann O. Keary, Trial Judge)

(Submitted February 2, 2016                    Decided April 21, 2016)

*William T. Morrison* was on the brief for appellant.

*Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, and *Candice C. Wong*, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, THOMPSON, *Associate Judge*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*: This is the second time this case has come before this court, a collateral attack on the conviction we affirmed in *Clark I*.[1] Alleging

---

[1] *Clark v. United States*, 51 A.3d 1266 (D.C. 2012) (*Clark I*).

ineffective assistance of counsel, appellant asks us to reverse the trial court's denial, without a hearing, of his motion to vacate his conviction and sentence pursuant to D.C. Code § 23-110 (c). After reviewing the record, we agree that appellant's representation was constitutionally deficient, but we conclude that he suffered no prejudice as a result. Accordingly, we must affirm.

## I. Facts and Proceedings

Appellant Ralph L. Clark was convicted of committing an armed robbery at Starbucks in the Howard University book store. He accepted the government's plea offer, which provided in relevant part that "[a]lthough the [g]overnment reserves the right to allocute at [Clark's] sentence in this case, it agrees not to allocute for a sentence greater than 10 years incarceration."[2] In its Memorandum in Aid of Sentencing, however, the government — in three places — recommended that Clark receive twenty years of incarceration.[3]

---

[2] *Id.* at 1267.

[3] *Id.*

"At the sentencing, the trial judge, having reviewed the plea agreement, mentioned the error in the government's memorandum. The prosecutor immediately acknowledged the error, explaining that she had forgotten the "cap" and agreeing that the twenty-year recommendation was 'off the table.'"[4] Defense counsel responded that she "didn't have a chance to talk to Mr. Clark about this."[5] She added that, because the government had filed a document vigorously arguing for a sentence that violates the plea agreement, the government should file another one with a retraction indicating that "they're vigorously arguing for the sentence that they agreed that they would."[6] The trial judge agreed with counsel but did not delay the sentencing. She advised counsel, after reviewing the plea agreement, that she had "immediately noticed the error" upon reading the government's sentencing memorandum; that "everyone's ready for sentencing today"; and that it would be "sufficient with the confession of error" if the prosecutor were to file "an amended document and we vacate the other one."[7] Defense counsel concurred, "[a]s long as the error is corrected."[8]

---

[4] *Id*. at 1268.

[5] *Id*.

[6] *Id.*

[7] *Clark*, 51 A.3d at 1268 (internal quotation marks omitted).

(continued . . .)

During allocution, after reviewing Clark's "violent criminal history," the prosecutor concluded by saying that "a ten-year sentence is very generous in this case."[9]  Defense counsel asked for leniency but did not object to the prosecutor's allocution.  After permitting Clark to speak, the judge sentenced him to prison for ten years, a sentence, we later observed, that "was consistent with the prosecutor's obligations under the plea agreement."[10]

## II. Direct Appeal (*Clark I*)

On direct appeal (*Clark I*), Clark's new counsel argued that the prosecutor had violated the plea agreement not only by recommending a twenty-year sentence after promising to cap the allocution at ten years, but also by compounding the violation by arguing that a ten year sentence would be "very generous."[11]  Counsel

_____

(. . . continued)

[8]  *Id.*  The corrected memorandum was filed the day after sentencing.  *See id.*

[9]  *Id.* (emphasis omitted).

[10]  *Id.* at 1269.

[11]  *Id.*

on appeal therefore asked this court to vacate Clark's sentence and arrange for resentencing before a different judge. Counsel also argued that if the new sentence were to exceed ten years, Clark should be permitted to withdraw his plea.[12]

This court agreed that the government's breach of the plea agreement in the sentencing memorandum "was both grave and inexcusable," indeed that this "blatant breach" had "potentially devastating consequences" for two reasons: the prosecutor initially requested twice the level of incarceration — "ten more years" — than the plea agreement allowed, and the prosecutor argued at sentencing that even the ten years called for by the agreement was "very generous."[13] This allocution, we said, "was anything but an emphatic retreat from the impropriety"; it was an "implied dissatisfaction with that agreement."[14] We acknowledged no reason to question the judge's assurance that she would be guided by the plea agreement, not by the government's noncompliance; but, we stressed: "the judge had read what she had read and had heard what she had heard, and the combination of what the prosecutor wrote and what the prosecutor said could hardly have left

---

[12] *Clark*, 51 A.3d at 1269.

[13] *Id.* at 1269-70.

[14] *Id.* at 1270.

the judge in doubt that the level of the prosecutor's commitment to the plea agreement was quite modest."[15]

All this said, we noted that when the judge decided to go ahead with sentencing, defense counsel replied, "Okay."[16] Furthermore, counsel did not object to the judge's decision to keep the case for sentencing, rather than referring it to another judge; nor did counsel object to the prosecutor's allocution.[17] This left us, we said, no alternative to reviewing the record for "plain error affecting substantial rights," a review focused exclusively on the actions of the trial judge.[18] This meant that, to prevail, "Clark would have to demonstrate that the judge committed plain error by failing to recuse herself *sua sponte*, so that the case could be reassigned to another judge who would not be apprised of the recommendation made by the government in its initial sentencing memorandum."[19]

---

[15] *Id.*

[16] *Id.* at 1271.

[17] *Id.*

[18] *Id.* at 1272.

[19] *Id.*

We concluded that, on direct appeal, Clark had satisfied none of the four requirements to establish plain error by the trial judge, as prescribed by the Supreme Court in *Olano*.[20] Our opinion ended as follows:

> In reaching the foregoing conclusion, we do not minimize the gravity of the government's initial breach, or the alarming potential of that breach for causing the defendant to serve ten years of unwarranted additional imprisonment, in contravention of the plea agreement. We also emphasize that when such a serious violation of a plea agreement has occurred, it is our obligation to scrutinize the record with appropriate care in order to assure that even where, as here, the breach has been formally corrected, it will not have continuing consequences that may be contrary to the interests of justice.[21]

Having conducted the requisite scrutiny, this court affirmed Clark's conviction.

### III. § 23-110 Collateral Attack (*Clark II*)

---

[20] *United States v. Olano*, 507 U.S. 725, 732-36 (1993) (claims of unpreserved error should be reviewed for (1) "an error," (2) that is "plain," (3) that affects "substantial rights," and (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.").

[21] *Clark I*, 51 A.3d at 1272-73.

Two months after this court issued its decision, but before the mandate issued, counsel in *Clark I* filed a motion with the sentencing judge pursuant to D.C. Code § 23-110 (a)(1), asking the judge to vacate Clark's convictions and sentence. Counsel alleged, fundamentally, that Clark's plea attorney had provided constitutionally ineffective assistance of counsel by electing, as a "tactical decision," to continue with sentencing without adequately informing Clark of the government's breach of the plea agreement. More particularly, to quote the motion, Clark's plea attorney had

> fail[ed] to consult with him during sentencing about the government's violation of the plea agreement or to explain to him what legal options were available to remedy the breach and the risks that each entailed, including the assignment of his case to a different judge for a new sentencing.

These were counseling deficiencies, said the motion, that prejudiced Clark by "realistically eliminating any possibility that he would receive a sentence of less than ten years as his plea counsel had allocuted for at sentencing."

In support of the motion, counsel proffered an affidavit by Clark, who averred that plea counsel had "stated on the record that she had not had an opportunity to discuss this [plea breach] with me." And, "without conferring with me about my legal options, she agreed that[] . . . the judge could proceed to

sentence me." Clark added: "[S]he failed to explain to me that even if I did not wish to withdraw my plea, I was still entitled to have my case assigned to a different judge who would sentence me without having any personal knowledge of the government's recommendation of a 20-year sentence. She also failed to discuss the advantages or disadvantages to me of being sentenced by a different judge. . . ." In sum, Clark and his counsel contended that plea counsel had usurped from Clark his right, as the defendant, to decide, among available "options," which one to pursue.

The government, in reply, submitted a declaration by plea counsel, who noted that she had requested a seven-year sentence, the "bottom of the sentencing guidelines"; had advised Clark that "a ten-year sentence would not be unexpected"; had decided to "wait to see the Court's reaction to the breach of the plea agreement" before deciding on a 'course of action'"; had seen how "very upset" the judge was about the government's breach; had thus made a "tactical decision" not to ask for the judge's recusal, because the judge "was upset with the government's actions" and had said that the "sentencing memorandum would not affect" the judge's decision; that there was a "significant risk that another judge, not as familiar with Mr. Clark and the progress he had recently made, might sentence Mr. Clark to more than ten years' imprisonment"; and that counsel's

"professional opinion," based on the judge's actions in this case and others, had led counsel to believe that the risk of Clark's receiving a sentence longer than ten years before a different judge was greater than the chance of his receiving a lesser sentence from the present judge.

Plea counsel's declaration did not dispute Clark's affidavit. She had no recollection as to whether she had spoken to her client before the sentencing proceeding began, although she was "confident" that she had advised Clark of the plea breach "at least during" that proceeding. She then had advised Clark that "we should proceed with sentencing" because of the judge's displeasure with the government and the judge's indication that she would not be influenced by the breach. Nowhere in counsel's declaration did she say she had told Clark that sentencing before another judge might be an option or that, alternatively, he could attempt to withdraw his plea.

The sentencing judge, applying *Strickland* criteria,[22] denied Clark's motion. The judge accepted plea counsel's reasoning, and justified counsel's judgment as a legitimate "tactical decision," not a deficiency in performance. Nor was Clark

---

[22] *See Strickland v. Washington*, 466 U.S. 668 (1984).

prejudiced by counsel's actions, concluded the judge, because this court had ruled in *Clark I* that "the government's breach did not affect [Clark's] substantial rights," thereby equating the absence of *Strickland* "prejudice" with a ruling of "no plain error."

## IV. Appeal of *Clark II*:  Procedural Matters

In this second appeal (*Clark II*), Clark argues that, in denying his motion alleging ineffective assistance of counsel, the sentencing judge abused her discretion by refusing to hold a hearing, which Clark contends the judge was required to conduct under D.C. Code § 23-110 (c) and related case law.  This appeal, more specifically, is premised on plea counsel's alleged failure, upon becoming fully informed about the breach, to ask the judge for time, before sentencing, (1) to thoroughly inform Clark about the government's actions in breach of the plea agreement, and (2) to "explain to Clark his legal options," including a request to withdraw of his guilty plea.[23]

---

[23] *See Santobello v. New York*, 404 U.S. 257, 262 (1971); *White v. United States*, 425 A.2d 616, 618 (D.C. 1980).

Having lost on direct appeal in *Clark I*, based on our plain error review of the trial judge's actions, the same appellate counsel now asks us to review Clark's sentence again, this time on collateral attack, focused on the actions of plea counsel, not the trial judge, in response to the prosecutor's undisputed violations of the plea agreement. Acknowledging that *Clark I* forecloses a second challenge to the court's failure to reassign the case for resentencing by a different judge, Clark limits his contention to counsel's failure to advise him of the possibility of seeking withdrawal of his guilty plea.

## A. *Shepard* Issue

Before we address the merits, there is a procedural matter we should acknowledge. In our *Shepard* decision, we held:

> [I]f an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim.[24]

---

[24] *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987).

We added that "an appellant may surmount the barrier created by the procedural default" by showing both "cause" for the failure to bring a timely collateral challenge and "prejudice" to his claim as a result of that failure.[25]

In this case, Clark filed his § 23-110 motion after we had announced our decision in *Clark I* but before we issued the mandate. Neither the government nor the court raised a timeliness issue when the motion was filed, nor does the government do so in this appeal. More specifically, the government does not challenge Clark's failure to ask for a stay of the mandate in *Clark I* so that, if the § 23-110 motion were denied, the appeal from that denial could be consolidated with the direct appeal.[26] Accordingly, we do not recognize a *Shepard* barrier here.

### B. Standard of Review

We turn now to the criteria governing our review. Under *Strickland*, in order to obtain a new trial by establishing constitutionally ineffective assistance of

---

[25] *Id*. at 1281.

[26] *See id*, at 1280.

counsel, the defendant must demonstrate, first, that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense."[27] To demonstrate prejudice, an appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[28]

"In evaluating counsel's performance, the reviewing court must indulge a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance."[29] Tactical decisions at trial "generally do not result in a finding of ineffective assistance of counsel[;] thus, [a]ppellant bears the burden of overcoming the presumption of counsel's competence."[30] The appellant, however, is entitled to an ample opportunity to challenge that competence. The statute under which we review for ineffectiveness, D.C. Code § 23-110, "creates a presumption

---

[27] *Strickland*, 466 U.S. at 687.

[28] *Id*. at 694. In *Harrington v. Richter*, 562 U.S. 86, 112 (2011), the Supreme Court characterized *Strickland* prejudice as a "substantial likelihood of a different result."

[29] *Chatmon v. United States*, 801 A.2d 92, 107 (D.C. 2002) (internal quotation marks omitted).

[30] *Id.*

that a hearing should be held, especially where the allegations of ineffectiveness relate to facts outside the trial record.[31] The statute emphasizes that "[u]nless the motion and files and records of the case *conclusively* show that the prisoner is entitled to no relief, the [trial] court *shall* cause notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto."[32]

Although the decision whether to hold a hearing is committed to the trial court's sound discretion, we have said that "the scope of that discretion is . . . quite narrow. Any question regarding the appropriateness of a hearing should be resolved in favor of holding a hearing. We will affirm the trial court's denial of a § 23-110 motion without a hearing" — as occurred in this case — "only if the claims (1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant to relief."[33] Accordingly, we must remand this case for a

---

[31] *Long v. United States*, 910 A.2d 298, 308 (D.C. 2006) (internal quotation marks omitted).

[32] *Id.* (quoting D.C. Code § 23-110 (c) (emphasis added).

[33] *Id.* (internal quotation marks omitted).

hearing unless we are "satisfied that under no circumstances could [Clark] establish facts warranting relief."[34]

In addressing this matter, we follow our time-honored standard of review. "A claim of ineffective assistance of counsel presents mixed questions of law and fact. We defer to any relevant findings of fact if they are supported by the evidence but owe no deference on the ultimate question of law."[35]

## V. Appeal of *Clark II*:  The Merits

In this collateral attack on Clark's sentence, counsel essentially argues that, if the sentencing judge was not required *sua sponte* to protect Clark's right to remedy a violation of his plea agreement, then assuredly his trial counsel should be held constitutionally accountable for withholding relevant considerations from Clark.

---

[34] *Id.*

[35] *Chatmon v. United States*, 801 A.2d 92, 102 (D.C. 2002) (citations omitted).

## A. Alleged Constitutional Deficiency of Counsel

According to the Supreme Court in *Florida v. Nixon*, "[a] guilty plea . . . is an event of signal significance in a criminal proceeding."[36]

> [C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant . . . has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal. . . . Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.[37]

As to guilty pleas in particular, the Supreme Court in *Santobello*, as well as this court in *White*, has noted that two remedies are commonly available to a defendant when the government breaches a plea agreement: withdrawal of the plea or, at a minimum, sentencing by a judge unaware of the breach.[38] It follows from this case law that, before sentencing, the defendant must be advised of the breach

---

[36] *Florida v. Nixon*, 543 U.S. 175, 187 (2004).

[37] *Id.*

[38] *See Santobello*, 404 U.S. 257 at 262; *see White*, 425 A.2d 616 at 618.

and of all available options, including advice from counsel as to whether the defendant may wish to withdraw the plea if the trial court were to grant that option. Otherwise, the defendant will have no informed basis for making a decision crucial to his liberty interest.

In this case, however, by plea counsel's own admission,[39] Clark never received word of the breach until the sentencing proceeding was underway, and thus he had no opportunity to consider the possibility of sentencing by a different judge (the issue resolved in *Clark I*) or of withdrawing his plea (the issue now before us). Clark instead was the recipient of his counsel's "tactical decision"[40] to proceed to sentencing before Judge Keary, who was aware of the breach and the government's lingering, negative views of Clark, in conflict with its concessions under the plea agreement.

Fundamental to Clark's claim of ineffective assistance of counsel, therefore, is the contention that his plea counsel was constitutionally deficient in failing to advise him of the government's breach and of all his possible remedies, in time for

---

[39] See *supra* Part III.

[40] See *supra* Part III.

Clark to make a considered decision and for counsel to present his position to the court before sentencing. As an abstract proposition, that contention is sound. A lawyer is an agent; the client is the principal. When it comes to electing among options before sentencing that will determine the client's prison time, a lawyer cannot ethically or lawfully interdict that choice by acting as the client's principal and justifying that preemptive role as a legitimate tactical decision.[41]

We have no doubt that plea counsel acted conscientiously in what she considered Clark's best interest, but evidence of good faith cannot supplant counsel's obligation to consult with the client before acting for him on a plea bargain decision. We also have no reason to doubt that, if counsel had asked the judge for time before sentencing to consult with Clark about the options available after the government's breach of a plea agreement, that request would have been granted.

---

[41] *See* American Bar Association, Standards for Criminal Justice (3d. 1993), "Control and Direction of Case," 4-5.2.; *id*. at 4-8.1; *Nixon*, 543 U.S. at 187; *Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal. . . .").

The government, however, embraces the sentencing judge's contrary conclusion that plea counsel's decision to continue with sentencing under all the circumstances was a sound "tactical" choice of a sort that traditionally is left to a defendant's lawyer. The government, for example, equates plea counsel's decision with the common, tactical decision not to call a particular witness. We, however, cannot agree that a mere tactical decision is involved here. The government's characterization of Clark's complaint against plea counsel as "peripheral" and "immaterial", when compared to the "reasonableness" of counsel's tactical decision to go forward — without first asking for time to consult with her client about the plea breach — is just plain wrong.[42] That decision is for a counseled client, not the lawyer, to make, no matter how improvident a plea withdrawal would be.[43]

In his § 23-110 motion, Clark alleged at least five times that counsel had been obliged — and failed — to explain "what legal *options* were available," and "the risks that *each* entailed, *including* assignment of his case to a different judge. . . ." (Emphasis added). Moreover, in plea counsel's declaration filed by the government, there is clear recognition that Clark was seeking relief from counsel's

---

[42] See *supra* note 41.

[43] See *supra* note 41.

failure, prior to sentencing, to "explore Mr. Clark's *options*" and "consult" with him about them (emphasis added). Because withdrawal of the plea, in addition to resentencing before a different judge, was a traditional option, and further because counsel was obliged to counsel-in-full, even if advising that one or more options would be ill advised, we are satisfied that Clark's motion sufficiently alleged a constitutional deficiency.

The government maintains, to the contrary, that Clark has waived his argument that "counsel was deficient for failing to advise him about whether to withdraw his plea altogether."[44] It is true, as the government points out, that in Clark's § 23-110 motion he emphasized, explicitly, only one option: "assignment of his case to a different judge for a new sentencing," the same option addressed in *Clark I*. Indeed, Clark did so at least seven times. (He adverted to plea withdrawal

---

[44] Clark appears to concede, at least for purposes of this appeal (to which we confine the point) that counsel's decision as to sentencing — whether by Judge Keary or a substitute judge — fell within counsel's prerogative of making tactical decisions. "Mr. Clark does not dispute that, had [counsel] consulted with her client about the full panoply of his legal options, including whether or not he desired to withdraw his guilty plea because of the government's breach, she would have retained the authority over the tactical decision as to whether to proceed before Judge Keary or to seek the appointment of a different judge." This contention is at odds with Clark's contention that, as a fully advised client, he would be entitled to make all final decisions with respect to the breached plea agreement, without a "tactical" override by his lawyer. See *supra* note 42.

once, not in the text as part of his argument but in a footnote collecting examples of a counsel's ethical duty to consult.)[45]

From Clark's motion limited in emphasis to only one option (transfer to a different judge), we can understand why the government argues waiver of the deficiency issue based on plea withdrawal. But the issue immediately before us is *not*, directly, whether the allegations in Clark's motion are insufficient, as a matter of law, to raise the deficiency issue as to plea withdrawal. In resolving that issue, we must inquire first whether Clark is entitled to a § 23-110 hearing on his motion or has forfeited that opportunity by failing to specify the withdrawal option.

---

[45] In addition to language referring to options in the plural, appellant Clark, in the affidavit in support of his motion (quoted above in Part III.), expressly complained about counsel's failure to explain reassignment to a different judge "even if I did not wish to withdraw my plea" — language the government cites to suggest that Clark actually had no interest in a plea withdrawal. Perhaps not, but, without a hearing, who can be sure? His words may have indicated no more than his understanding that plea withdrawal was among the options about which he required advice to compare potential consequences; the words are not necessarily an implicit admission that he no longer had interest in plea withdrawal as a potentially available option.

Clark has a right to a hearing, in the words of § 23-110 (c), "[u]nless the motion and files and records of the case *conclusively* show that the prisoner is entitled to no relief."[46] Because of the multiple references to "options," as well as to a "different judge," there appears to be a disconnect within the motion that requires resolution, with some language embracing all available remedies, and other language appearing to limit the remedy sought. For purposes of resolving this ambiguity, the statute, § 23-110 (c), requires the reviewing judge to consider not only the motion itself but also the "files and records" of the case.[47] In doing so, the judge would have noted in Clark's handwritten, pro se letter to the trial judge, headed "Notice of Appeal," a request to "vacate any and all decisions which directly relate[] to this flawed plea agreement" — language that arguably embraces vacation of the plea itself. Furthermore, although Clark characterized his letter as a "Notice of Appeal," he presumably was aware that, in the plea agreement (as this court noted in *Clark I*),[48] he had waived the right of appeal, suggesting that his letter could just as easily have been construed as a § 23-110 motion directed at

---

[46] D.C. Code § 23-110 (c) (2012 Repl.) (emphasis added).

[47] *Id.*

[48] *Clark I*, 51 A.3d at 1269.

undoing his agreement with the government.[49]   Under these circumstances, we would not be comfortable concluding as a matter of law, without a hearing, that Clark limited his § 23-110 motion to the judicial transfer option.

The government, however, would have us reject any need for a hearing on the scope of the deficiency issue in Clark's motion.  It argues that plea counsel did "not defy prevailing professional norms by failing to raise for discussion a palpably incredible prospect that would have manifestly increased, not decreased," Clark's chances for "a sentence of greater than 10 years' imprisonment."  With that statement, the government improperly diminishes counsel's professional obligation.  Clark contends that his motion claims the unquestionable right to advice from his lawyer about *all* available options, including plea withdrawal, not just those that his lawyer deems prudent.  The government, however, appears to believe that plea counsel's professional obligation will be satisfied if that advice is limited to options that would only permit the client to make a decision reflecting sound, not dubious, judgment.  Thus, by allowing counsel to narrow the universe

---

[49]   The government argues that, because Clark chose to treat his letter to Judge Keary as a notice of appeal, rather than a § 23-110 motion, he cannot have it serve double duty as, potentially, a motion justifying a challenge to his counsel. We do not agree that a convicted defendant, acting pro se at the time, cannot rely on this motion as evidence of his intent as to plea withdrawal.

of options based solely on counsel's own judgment, the government would leave to Clark's lawyer a slice of the decision that Clark, the client, is ultimately entitled to make. It may well be that *after* full disclosure to the client of all options required of effective counsel, one option (including, perhaps, a plea withdrawal) might be so irrational, if exercised, that the claim to relief would be "palpably incredible" and, despite full disclosure, would not "entitle [Clark] to relief"[50] — thereby justifying denial of a § 23-110 hearing.[51] But that possibility is not part of the deficiency analysis; it would go to an alleged failure to show the required prejudice.

## B. Alleged Prejudice from Counsel's Deficiency

We turn, therefore, to prejudice. In denying Clark's § 23-110 motion, Judge Keary concluded, and the government agrees, that the prejudice analysis was resolved by our decision in *Clark I*, where we found no plain error — no error

---

[50] *Long v. United States*, 910 A.2d 298, 308 (D.C. 2002) (quoting two of three situations which this court has said will justify denial of a § 23-110 (c) motion without a hearing.); see *supra* Part IV.B.

[51] Given the mix of specificity and generalization in Clark's motion, we cannot uphold its dismissal as "vague or conclusory," the third situation we have said that will justify denial of a § 23-110 (c) motion without a hearing. *See id.* The government does not suggest otherwise.

affecting Clark's "substantial rights" — in the trial judge's failure *sua sponte* to transfer the case to a different judge for sentencing.[52] This conclusion, we are told, has preclusive effect here: absent the loss of substantial rights, there can be no *Strickland* prejudice — no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[53] This preclusion argument, however, is overstated when based on *Clark I*, because *Clark I* concerned the alleged loss of substantial rights only from failure to reassign the case for sentencing. We did not consider in *Clark I* (because the issue was not presented on direct appeal) whether counsel's alleged deficiency in failing to advise about the possibility of a plea withdrawal prejudiced Clark. That issue is now before us.

If Clark had received counsel about plea withdrawal, was there a "reasonable probability that . . . the result of the proceeding would have been different"[54] — "a substantial likelihood of a different result"?[55] Judge Keary did

---

[52] *See Clark I*, 51 A.3d at 1272.

[53] *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).

[54] *Strickland*, 466 U.S. at 694.

[55] *Harrington*, 562 U.S. at 112.

not address that question because she understood Clark's § 23-110 motion to seek only one form of relief — a transfer for resentencing — and concluded that *Strickland* prejudice, as the government argued in response to Clark's motion, was "equivalent to" the "third prong of the plain error test."[56]  As a result, Judge Keary ruled that Clark's claimed prejudice was foreclosed by this court's decision in *Clark I* finding no loss of "substantial rights" and thus no plain error from the failure to reassign sentencing.

On appeal, the government agrees with Judge Keary but insists in its brief that, even if *Clark I* does not foreclose a prejudice inquiry here (because only a sentencing transfer, not a plea withdrawal, was involved), the judge's "purported failure to discuss alternatives" to going ahead with sentencing "had no material effect on [Clark's] rights or the outcome."  The likelihood of Clark's withdrawing his plea, even if offered the opportunity to do so, was "palpably incredible,"[57] says the government in its brief, if only because a trial would have confronted Clark with a "10-year *mandatory minimum* [sentence] on the first count (which his plea cut by half)."  By way of comparison, the sentence he received pursuant to his

---

[56]  See *supra* note 20.

[57]  *Long*, 910 A.2d 298 at 308.

plea, fully in conformity with the plea agreement, was only three more years of incarceration than his counsel had asked for.

The Supreme Court's decision in *Dominguez Benitez*[58] affords the government a compelling argument. When accepting the defendant's guilty plea, the district court judge had given most of the warnings required by Federal Criminal Rule 11, but "the judge failed to mention that [the defendant] could not withdraw his plea if the court did not accept the Government's recommendation."[59] Without objection, the judge sentenced the defendant to a term that exceeded the limit in the plea agreement. In rejecting the defendant's request to withdraw his plea, the Supreme Court found no plain error. The Court held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea,"[60] the same standard applicable to ineffectiveness claims in *Strickland*. To get there the Court

---

[58] See *supra* note 51.

[59] *Id*. at 78.

[60] *Id*. at 76.

first quoted *Kotteakos*,[61] observing that, "[t]o affect 'substantial rights,' . . . an error must have a 'substantial and injurious effect or influence in determining the . . . verdict.'"[62]   The Court then cited its more recent decision in *Bagley*,[63] which held that when the burden is on the defendant to show prejudice (instead of on the government to demonstrate harmlessness), the Court "invoke[s] a standard" somewhat different from, but "with similarities to," *Kotteakos*, namely the *Strickland* standard.[64]   In *Bagley*, the Court applied Strickland's prejudice analysis to *Brady*[65] claims; in *Dominguez Benitez*, the Court extended that analysis to plea withdrawals.

Clark's case ostensibly differs from *Dominguez Benitez* in one significant respect.  Clark's claim concerns a deficiently counseled defendant; *Dominguez Benitez* did not.  Indeed, plea counsel's alleged deficiency in advising Clark was halfway toward constitutional error, whereas the trial judge's Rule 11 error in

---

[61] *Kotteakos v. United States*, 328 U.S. 750 (1946).

[62] *Dominguez Benitez*, 542 U.S. at 81.

[63] *United States v. Bagley*, 473 U.S. 667 (1985).

[64] *Dominguez Benitez*, 542 U.S. at 81.

[65] *Brady v. Maryland*, 373 U.S. 83 (1963).

*Dominguez Benitez* did not implicate the Constitution.[66] Ultimately, however, this distinction makes no difference. By importing *Strickland's* constitutional standard for prejudice into plain error review of attempted plea withdrawals based on trial court error, the Supreme Court did no more than equate plain error review with the standard already applicable when requesting plea withdrawals generated by constitutionally ineffective assistance of counsel. In *Dominguez Benitez,* therefore, prejudice was determined by whether there was a "reasonable probability" that, but for the trial court's Rule 11 error, the defendant would not have entered his guilty plea.[67] Similarly, in this case, prejudice will be determined by whether there was a "reasonable probability" that, "but for counsel's professional errors," Clark would have sought to withdraw his plea. Thus comes our specific question: is there a reasonable probability that, if counsel had fully informed Clark of all possible options after the breach, would Clark have asked Judge Keary to permit withdrawal of his guilty plea.

---

[66] In *Dominguez Benitez*, Justice Souter observed: "[I]n this case . . . [it is] worth repeating[] that the violation claimed was of Rule 11, not of due process." 542 U.S. at 83.

[67] *Id.* at 82.

Assuredly no one, including an attorney, can properly speak for a defendant in Clark's liberty-deprived situation without consulting him, and thus no one can be absolutely sure about how Clark would have addressed the situation with all the facts at hand.  Indeed, Justice Souter acknowledged in *Dominguez Benitez* that a defendant may make "foolish" choices in going to trial, rather than accepting a plea bargain, even "absent the error" at issue.[68]  We cannot tell for sure how Judge Keary would have reacted to a request for a plea withdrawal if she had believed that issue was before her,[69] but any effort to resolve what her likely decision would have been would be pointless, for that decision could not stand in the way of determining the "reasonable probability" of Clark's anterior decision whether to *ask* for withdrawal.

---

[68]  *Id*. at 85.

[69]  *See Bennett v. United States*, 726 A.2d 156, 165-66 (D.C. 1999) (explaining the criteria for pre-sentencing plea withdrawal under the "fair and just" standard; "[T]he factors a trial court must consider when evaluating a motion to withdraw a guilty plea include:  (1) whether the defendant has asserted his or her legal innocence; (2) the length of the delay between entry of the guilty plea and the desire to withdraw it; and (3) whether the accused has had the full benefit of competent counsel at all relevant times.  [N]one of these factors is controlling and the trial court must consider them cumulatively in the context of the individual case.  Moreover, the circumstances of the individual case may reveal other factors which will affect the calculation . . . under the fair and just standard.) (internal quotation marks and citations omitted).

In discussing plea counsel's alleged deficiency, we have noticed the possibility from Clark's pro se Notice of Appeal that Clark may have been seeking a plea withdrawal — a matter involving allegedly deficient counsel not raised on direct appeal in *Clark I*. And of course we have concluded that, absent a hearing, we cannot say as a matter of law that Clark had not sufficiently alleged that deficiency in his § 23-110 motion. At most, however, the evidence suggests a possibility, not probability, that Clark — if properly counseled — would have asked to withdraw his plea. We agree with the government that if Clark, before sentencing, had been counseled about the plusses and minuses of asking to withdraw his plea, he presumably would have faced a formidable argument by his lawyer that withdrawal would be irrational, because a trial might well have led to a ten-year mandatory minimum sentence on the first count (which his plea cut in half), compared to the sentence he would receive pursuant to the plea agreement (only three more years of incarceration than his counsel had asked for). Although plea counsel's declaration in response to Clark's § 23-110 motion did not address plea withdrawal, it is difficult to imagine that counsel, advising rationally, would have supported withdrawal; in fact, counsel's moving quickly to retain sentencing before Judge Keary is evidence that counsel did not favor deep-sixing Clark's plea.

All things considered, we conclude that Clark has proffered no reasonable probability that, but for counsel's failure to advise about plea withdrawal, Clark would have sought to withdraw his plea. Admittedly, we are concluding as a matter of law, on the record here without a hearing, that Clark presumably would have followed what his lawyer presumably would have advised: stick with the guilty plea. On the face of it, reliance on these double presumptions might seem harsh. But, despite the fact that a defendant is entitled to make foolish judgments about pleading guilty and going to trial, we are not obliged under § 23-110 to honor the irrational over the rational. And we can safely say, on this record, that it is irresistibly clear that no reasonable counsel would have advised Clark to withdraw his plea.[70] Nor does Clark proffer a reasonable argument as to why — in lieu of sentencing by Judge Keary, as his counsel advised — he would have wanted to walk away from his plea into the uncertainties of a trial, without an agreement capping an eventual sentence.[71]

---

[70] We exclude the possibility of a deceased key witness for the prosecution, for in that case the likelihood of the judge's allowing a plea withdrawal would most likely be nil.

[71] In *Clark I*, Clark argued that he should be entitled to withdraw his plea if — when sentenced by a different judge — "his new sentence exceeds ten years." 51 A.3d at 1268. Although the thrust of that appeal, as we have indicated above in Part II., was Clark's effort to achieve sentencing before a different judge, not withdrawal of his plea, this is some evidence that Clark recognized that a plea

(continued . . .)

Having concluded that Clark has not shown *Strickland* prejudice from counsel's alleged deficiency, we must say that any need for a hearing on the deficiency allegations is now moot.

*****

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*

_____

(. . . continued)

withdrawal, without the guarantees built into his plea bargain, would be too hazardous.